EBAUGH v. MULLINAX.

1. TAX SALES—TIME OF ADVERTISEMENT—CASE CRITICISED.—Under a statute requiring a tax sale of land to be advertised "weekly for two weeks in one newspaper," the sale is sufficiently advertised if notice of the sale is inserted in the issues of a newspaper on the two Saturdays next preceding the sale on the first Monday of the month. Alexander *v.* Messervey, 35 S. C., 409, followed.

2. FORFEITED LANDS—RIGHT OF REDEMPTION.—Land was forfeited to the State in February, 1882, for delinquent taxes of 1880, and conveyed to a stranger by the Sinking Fund Commission in May, 1884. *Held,* that under the law then of force applicable to this forfeiture, the owner had the right to redeem his land at any time prior to its actual sale by the Sinking Fund Commission, and if such offer was made, accompanied with full payment, before such conveyance, then the conveyance was void.

3. CHARGE TO JURY.—The trial judge failed in this case to leave with the jury the fact whether the offer of redemption by the defendant was made before the conveyance to the stranger. MR. CHIEF JUSTICE McIVER *dissenting.*

Before HUDSON, J., Berkeley, June, 1892.

Action by D. C. Ebaugh against A. J. Mullinax.

*Mr. R. J. Kirk,* for appellant.

*Messrs. Mordecai & Gadsden,* contra.

December 11, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action for a tract of land (308 acres) in Berkeley County. The land was the property of the plaintiff, but the defendant claimed that the title had been transferred to him by virtue of a sale and deed for $10.84, taxes and penalty paid by him to the commissioners of the sinking fund, acting for the State. The case was once

before in this court. Upon the first trial, the tax title of the defendant was sustained on Circuit, but upon appeal to this court, the judgment was reversed and a new trial ordered, on the ground that "Before the land of a defaulting taxpayer can be validly sold for the non-payment of the taxes assessed thereon, there must be an unsuccessful effort made to enforce payment by distress and sale of the personal property of the defaulting taxpayer, the best evidence of which is an execution issued, and a return of *nulla bona* thereon." See 34 S. C., 364.

Accordingly the case went back to the Circuit for a new trial, which was had before Judge Hudson and a jury. For the purpose of the trial, the *defendant* admitted that if the plaintiff's witnesses were present and sworn, that they would prove that up to the time of the delinquent sale of the property in question, to wit: February 6, 1882, the plaintiff had a fee simple title thereto, dating back to a grant, &c.; and thereupon the plaintiff rested his case. For the purpose of this trial the *plaintiff* admits the passage of the resolution by the board of sinking fund commissioners, under which the title about to be put in evidence was made and delivered. The title deed from the sinking fund commission to A. J. Mullinax, dated May 6, 1884, was put in evidence. The defendant also proved that the various steps required to be taken by the acts of the General Assembly of the State, for the carrying out of delinquent land sales, had in this instance been practically complied with, the only exceptions thereto claimed by the plaintiff and denied by the defendant being (1) that the notice of the delinquent sale had not been advertised for the length of time required by the statute governing said sales; and (2) that before the sale by the sinking fund commission to the defendant, the plaintiff had made a legal "redemption" of the land by paying the amount of the tax, with costs and penalties, into the hands of the agent of the sinking fund commission, and taking his receipt therefor.

As to the first question—the sufficiency of the advertisement—Mr. Eason, county auditor, testified that he received from the treasurer a list of delinquent lands for the year 1880, and the tract in question was among them; the advertisement was published in the News & Courier, a daily paper in Charleston,

January 28 and February 4, 1882; attended the sale on February 6, 1882; the tract was knocked down to the State for want of bidders. As to the second question—the "redemption" claimed—Mr. Ebaugh, the plaintiff, testified that he was absent from the State until the spring of 1882, and when he returned, he found that his land had been forfeited, and he made an application to redeem it, and paid what money was demanded to Mr. U. R. Brooks, claiming to be agent of the sinking fund commission. Mr. Brooks received the money and gave witness a receipt for it, subject, as he thinks, to the approval of the sinking fund commission; but some two or three weeks after paying the money, he received a letter from Mr. J. N. Lipscomb, secretary of state, enclosing check for the money which had been paid, and saying it was returned "because the lands were already sold by the sinking fund to Mr. A. J. Mullinax," &c. This letter bore the same date as the deed of the land to Mullinax, viz: May 6, 1884.

Both the plaintiff and defendant made a number of requests to charge, but it is not considered necessary to state them here, as the charges and the refusals to charge will be considered in connection with the exceptions. Under the charge of the judge, the jury found a verdict for the defendant, and the plaintiff appeals to this court upon the following exceptions: I. Because his honor refused to charge as requested by the plaintiff: "The 100th section of the act of 1874, which required the sale of delinquent lands for taxes to be published 'weekly for two weeks,' requires the auditor to advertise for full fourteen days. An advertisement for any shorter length of time is not a compliance with the statute, and a sale under such circumstances passes no title to the purchaser." II. Because his honor refused to charge as requested by the plaintiff: "If the jury find that the tax, costs, and penalties had been paid by the plaintiff to the agent of the sinking fund commission at any time before the sale to Mullinax, then the acceptance by said agent was a legal redemption by the owner, and the subsequent sale to Mullinax was without authority and void." III. Because his honor erred in charging the jury: "If, *before* the sinking fund commission conveyed the land to Mullinax, Ebaugh made the

offer to redeem, there would be nothing in the statute law authorizing the redemption." IV. Because his honor erred in charging the jury: "But the time for redemption had passed. His entire right under the law to redeem the land was gone, and the sinking fund commission had the right to make a sale of the land. Not only had the ninety-one days gone, but about two years had elapsed. Remember these points." V. Because his honor erred in charging the jury: "Under the decision of our own Supreme Court in the case of *Alexander* v. *Messervey*, I will instruct you, that the tax collector is required to advertise for two weeks. Therefore, if there was an insertion in a weekly paper one week, and the weekly issue of the same paper for the next week, or any day in the following week, he can sell, whether the full period of fourteen days has expired or not, because he has advertised *weekly for two weeks*," &c.

First. Exceptions 1 and 5 make the point as to the alleged insufficiency of the advertisement of the sale; that the publication for two days only, once on January the 28th and once February 4th, 1882, was not "weekly for two weeks."

It is true, that this was not a judicial sale ordered by the court, but a sale by a collector; and as Judge Cooley said: "A sale by a collector can not be *assimilated* to a sale by a sheriff under judicial process, issued by a competent court. His power is a naked power, not coupled with an interest, and in all such cases the law requires that every prerequisite to the exercise of the power must precede its exercise." But the question here resolves itself into one of construction of the language used, and, looked at in that way, we concur with the Circuit Judge, in being unable to distinguish this case from that of *Alexander* v. *Messervey*, 35 S. C., 409.

Exceptions 2, 3, and 4 raise the only other question seriously made in the case, complaining of error on the part of the Circuit Judge in charging: "If, before the sinking fund commission made the conveyance to Mullinax, the offer to redeem was made by Ebaugh, there would be nothing in the statute law authorizing the redemption. * * * But the time for redemption had passed. His entire right under the law to redeem the land was gone, and the sinking fund com-

mission had the right to make a sale of the land. Not only had the ninety-one days gone, but about two years had elapsed.'' Was this error? It is undoubtedly true that statutes ''allowing redemption from tax sales are to be liberally construed in favor of the owner. Whatever tends to modify the right of the government to sell lands for taxes, is favorable to the citizens, and ought to be liberally construed, on the principle that remedial statutes are to be beneficially expounded.'' Desty, p. 532. As we understand it, the only object of the State, in making such stringent requirements in regard to the forfeiture and sale of delinquent lands, is to secure at all events the taxes and costs; and, therefore, it is the wise policy of the State to favor ''redemption,'' as in that way the payment of tax dues is secured without the expense of sales or the sacrifice of the property of the citizen incidental thereto. It is certainly *now* the law of the State, that the owner of lands forfeited for taxes has the right to redeem the land at any time before the sale shall be actually made. See section 291 of the act of February 9, 1882, ''To provide for the assessment and taxation of property,'' 17 Stat., 1039, and also section 307 of the General Statutes.

But, in answer to this view, it is urged that the act of 1882 is not retrospective, and its last section (305) declares that the provisions of the act should not affect the assessment made in the year 1881, nor the collection of taxes under any act passed at that session (1882) of the legislature; but such collections should proceed in the manner prescribed by the acts authorizing the same, and the laws in relation thereto, that were of force from (we suppose it should be *before*) November 1, 1881. Assuming, then, that we must apply the law here as it stood before the passage of the act of 1882, how will the matter stand? The default of the taxpayer was for the year 1880; land offered for sale and forfeited for want of bidders February 6, 1882, and conveyed to Mullinax May 6, 1884. It is contended that the act of 1882 being the first and only one which provides that the property owner shall have the right to redeem it at any time before the actual sale, and the provisions of that act not applying here, that the landowner is relegated to the act of 1874, which limits the right of ''redemption'' to ninety-one days after

the sale, and that under it the property owner, after the expiration of ninety-one days, had absolutely lost his right to redeem at all, his right having *vested* in the State by forfeiture.

We can not accept this view. It certainly overlooks the fact that the act of 1882 was *not the first* to change the law by allowing "redemption" at any time before the actual sale. On December 23, 1879, an act was passed, "To extend the time for the redemption of forfeited lands" (17 Stat., 40), the second section of which provided as follows: "That all lands now or hereafter upon the forfeited land record, which have been offered for sale under section 117 of the act of 1874, and which have not been sold for want of bidders, nor redeemed under the provisions of this act, shall be treated as assets of the State, in charge of the sinking fund commission, and by them sold at public auction. * * * That this section shall take effect on and after the 31st day of October, 1880." And at the very next session of the legislature, on December 21, 1880, the above act was altered in some particulars, and amended by adding the following: "That section 2 of 'an act to extend the time for the redemption of forfeited lands,' be and is hereby amended, by adding the following: *Provided,* That any time before any such sale shall be actually made, the owners of any such piece or parcel of such lands, or those claiming under or through such owners, or others, shall have the right to redeem any piece or parcel of the lands so forfeited, by paying in gold, silver, United States treasury notes, national bank notes, the full amount of all accumulated taxes, costs, and penalties due and unpaid thereon up to the date of such payments." See 17 Stat., 327.

We do not see why this amended act should not control the case. The original act took effect October 31, 1880, and the amendment from its passage, December 21, 1880. At that time the land still remained private property—had not been forfeited to the State, which did not occur until February 6, 1882. The terms of the provision, however, are large enough to include the case when it did arise—"*All lands now or hereafter upon the forfeited land record.*" As to the cases described, it provides that the landowner, "at any time before any such sale shall be actually made," might redeem his land by paying all taxes

and penalties; and, as we think, thereby repealing so much of the act of 1874 as limited the right of redemption to ninety-one days after forfeiture.

There was conflicting testimony as to whether the payment to the agent Brooks was before the actual sale and conveyance to Mullinax; and it was claimed that the Circuit Judge, as he ought to have done, left that question of fact to the jury. That is so, but what could that avail the plaintiff, when the jury were at the same time instructed that the plaintiff's right of redemption was absolutely gone, and that, without regard to that question or how they might decide it, the sinking fund commission had the right to disregard the effort to redeem the land and to sell it? In the view taken by the Circuit Judge, it seems to us that the charge on the facts was unnecessary, if not misleading.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.

MR. JUSTICE POPE concurred.

MR. CHIEF JUSTICE MCIVER, *dissenting.* In this case two questions are presented: 1st. As to the sufficiency of the notice of the delinquent land sale; 2d. As to the charge of the Circuit Judge upon the question of redemption. As to the first of these questions, I agree with Mr. Justice McGowan in the view which he has taken, and do not deem it necessary to add anything to what he has said. But as to the second question, I am unable to agree with him; not because I have any fault to find with his view of the law applicable to this case, but because, as it seems to me, he has placed an erroneous construction upon the charge of the Circuit Judge. Assuming the law to be, that the plaintiff, as a defaulting taxpayer, was entitled to redeem his land at any time before it was sold by the sinking fund commissioners, and that such right of redemption was not finally lost by the expiration of ninety-one days after the delinquent land sale, when the property was declared forfeited to the State for want of bidders, the practical inquiry is, whether the charge

of the Circuit Judge, properly construed, was in conflict of this view of the law.

The error in the opinion, as I submit with deference, arises from the fact, that detached sentences of the charge are set out in the exceptions and incorporated in the opinion, from which the conclusion is drawn that the charge was in conflict with the law as stated. But nothing is better settled than that the whole charge must be taken together and construed as a whole, and not by detached sentences that may be found in it. Otherwise, it would be very difficult, if not impossible, for any charge to stand the test. Owing to the imperfections of human nature, it would be unreasonable to expect that even the best and most careful judge could escape criticism if his charge is to be judged of by taking up detached sentences, without regard to the context in which they appear. The material inquiry is, whether the jury have received erroneous instruction as to the law applicable to a given case, and to determine this inquiry it is necessary that the whole charge should be considered together, for that is the way it was received by the jury, and that, therefore, is the way in which the jury must be regarded as having considered it. Looking at the charge in this light, I do not see how the jury could have been misled as to the law applicable to this case.

The following is the whole of the charge relating to the question of redemption, as it is set out in the "Case," to which alone we must look, and not to the exceptions, where it is not fully set out: "The next point principally contended for is that Mr. Ebaugh practically, and in the eye of the law, redeemed this land before it was sold to Mullinax. The right to redeem extended to the full period of ninety-one days after the delinquent land sale. In this case there was no attempt made to redeem until probably two years had elapsed, but it was contended that the offer to redeem took place before the sale to Mullinax. You are to determine that fact, whether it did or not. You have heard the letter of the secretary of state, who was chairman of the sinking fund commission, in response to Mr. Ebaugh, sending back the money he had given to Mr. Brooks, and declaring that it came too late, and that the sale

had been made to Mr. Mullinax. Mr. Ebaugh, unfortunately, was absent from the State. I do not know that there is any provision in the statute to save one from the penalties of the law because he is absent from the State. The law gives ninety-one days after the sale, and after that time the sinking fund commission would have the right to sell this property. If, before the sinking fund commission made the contract of sale, he made the offer to redeem, there would be nothing in the statute law authorizing the redemption. But in this case you must take the testimony even on this point. There is the letter of the secretary of state, the testimony of Mr. Ebaugh as to his payment to Mr. Brooks, and all that. You will consider it all. But the time for redemption had passed. His entire right under the law to reclaim the land was gone, and the sinking fund commission had the right to make a sale of the land. Not only had the ninety-one days gone, but about two years had elapsed. Remember these points."

It seems to me that the obvious meaning of that portion of the charge relating to the question of redemption, all of which is copied above, when considered as a whole, as it must be, is that until after the lapse of ninety-one days from the delinquent land sale, the defaulting taxpayer has the absolute right to redeem; and before that time does elapse, the sinking fund commission have no authority to offer the land for sale; but after that time has elapsed, without an offer to redeem having been made, the land may then be offered for sale by the commission, and if actually sold before any offer to redeem is made, then the purchaser will acquire a good title. Unless such be the proper construction of the charge, it is impossible to conceive why the question of fact, whether the offer to redeem was made before the sale to Mullinax, should have been submitted to the jury. If the jury were to understand from the charge that the undisputed fact that Ebaugh had made no offer to redeem within the ninety-one days, effectually barred his right of redemption, then there was literally no question of fact in the case; and it would have been the idlest folly, amounting to a mere mockery, to submit the question of fact as to whether the offer to redeem was made before the sale to Mullinax, to

the decision of the jury. I am unwilling to adopt a construc-
tion of the charge, which necessarily involves such an idea,
especially when, in my judgment, the charge, considered as a
whole, forbids such a construction.

The detached sentences in the charge which seem to be relied
upon by appellant, are: 1st. "If before the sinking fund com-
mission made the contract of sale he made the offer to redeem,
there would be nothing in the statute law authorizing the re-
demption;" but it seems to me clear that, from the language
immediately preceding and that immediately following that
sentence, the Circuit Judge was speaking of the right to redeem
within the ninety-one days, and not of the right to redeem after
the lapse of ninety-one days. For the language preceding is:
"The law gave ninety-one days after the sale (meaning, of
course, the *delinquent* land sale), and after that time the sinking
fund commission would have the right to sell this property;"
and, as if to make the meaning more plain, the sentence relied
upon by appellant is immediately [followed] by these words:
"But, *in this case* (italics mine), you must take the testimony even
on this point"—that is, the point whether Ebaugh made the offer
to redeem before the sale to Mullinax—clearly meaning that,
though Ebaugh had lost the right to redeem, by the lapse of
the ninety-one days before any sale could be made by the com-
mission, yet if he did offer to redeem before the sale was actually
made, that would be sufficient. 2d. The other sentences relied
upon are as follows: "But the time for redemption had passed.
His entire right under the law to reclaim the land was gone,
and the sinking fund commission had the right to make a sale
of the land. Not only had the ninety-one days gone, but about
two years had elapsed. Remember these points." The latter
part of this quotation shows clearly that the judge was speaking
of the ninety-one days which must elapse before "the sinking
fund commission had the right to make a sale of the land;" and
his concluding injunction—"Remember these points," not *this*
point—shows that he meant that the jury should consider not
only the point that the ninety-one days right to redeem was
gone, but also the further point which he had previously di-
rected them to consider, *"in this case"*—whether the offer to

redeem by Ebaugh was made before the sale to Mullinax. I have no doubt that the judge intended the jury to understand, and have as little doubt that the jury did understand, that the whole case turned upon the question whether Ebaugh made the offer to redeem before the sale to Mullinax; and their verdict must be regarded as a response in the negative to that question.

There is one circumstance in this case not without significance, and that is the failure to produce the receipt which the plaintiff says he took from Brooks, which he thinks was given subject to the approval of the sinking fund commission. That receipt would have tended to show not only the precise date of the payment of the money, but also the terms upon which the money was received; whether conditioned upon the approval of the sinking fund commission, or, what was more probable, upon the condition that the land had not already been sold, as was stated to be the fact in the letter of the secretary of state returning the money. It must be remembered that the act of 1879 (17 Stat., 40), requiring sales of forfeited land by the sinking fund commission to be made "at public sale" after advertisement, was amended by the act of 1880 (17 Stat., 327), by striking out the words "at public sale" and the words "after such advertisement;" so that, as the law then stood, there was nothing to prevent a private sale of such lands without advertisement. It may be, therefore, that Brooks received the money upon the condition that the land had not already been sold at private sale, of which he was not informed. While I do not mean to insinuate even, that this receipt was intentionally suppressed by the plaintiff, yet it seems to me it would have been an important piece of evidence, and if the plaintiff, from any cause, even the most innocent, failed to produce it, he must take the consequences. It was the duty of the plaintiff to prove his case, and in order to do so it was necessary for him to show that he had actually paid the money before the sale to Mullinax, which I think we are bound to assume the jury found was not the case; and that is the end of the matter.

I think, therefore, that the judgment of the Circuit Court should be affirmed.

                                    Judgment reversed.